02-10-256-CV










 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00256-CV

 

 


 
 
 In the Interest of V.K.C.K. and J.D.B., Children
 
 
  
 
 
  
 
 
 
 
  
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

 

----------

 

FROM THE 235th
District Court OF Cooke COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          Appellant
G.D.H. appeals the termination of her parental rights to V.K.C.K. and J.D.B.  She
contends in five issues that the evidence is legally and factually insufficient
to support the trial court’s findings concerning best interest and statutory grounds
for termination.  We affirm.

II. 
Background

Appellant
is V.K.C.K. and J.D.B.’s mother.  V.K.C.K. was born January 19, 2001, and her
biological father is J.K.  J.D.B. was born March 23, 2003, and his biological
father is J.A.B.  J.K.’s parental rights to V.K.C.K. and J.A.B.’s parental
rights to J.D.B. were previously terminated, and neither J.K. nor J.A.B. is a
party to this appeal.

The
Department of Family and Protective Services (the Department) took custody of
V.K.C.K. and J.D.B. in June 2009 after obtaining an emergency order for their
protection from the trial court.  After a July 2010 bench trial at which
Appellant and Department caseworker Cecilia Powers testified, the trial court
signed a final order of termination.  Specifically, the trial court found that
termination of Appellant’s parental rights to V.K.C.K. and J.D.B. is in the
children’s best interest and that Appellant (1) knowingly placed or allowed her
children to remain in conditions or surroundings which endangered her
children’s physical or emotional well being; (2) knowingly engaged in conduct
or placed her children with persons who engaged in conduct which endangered her
children’s physical or emotional well being; (3) failed to comply with the
provisions of a court order that specifically established the actions necessary
for her to obtain the return of her children; and (4) has a mental or emotional
illness or deficiency that renders her unable to provide for the physical,
emotional, and mental needs of her children.

Appellant
testified that she does not have a good relationship with her family and that
her children are her only “real family.”  When she was twelve years old,
Appellant was physically abused by her mother and step-father, sexually abused
by her biological brother, and diagnosed with bipolar disorder.  Appellant
testified that she still has the bipolar diagnosis, that she has been
prescribed Lithium, but that she often runs out of medication.  Appellant
testified that she understood the importance of regularly taking her medication
but said that she ran out of medication three weeks before trial and had not
yet had an appointment to obtain more medication.  Appellant acknowledged that,
without medication, she becomes irritable and depressed and experiences manic
phases, but Appellant denied becoming aggressive without medication.

When
Appellant was fifteen years old, her mother kicked her out of the house, and
Appellant began living with J.K.  Both J.K. and Appellant were using
methamphetamines at the time, but Appellant testified that she stopped using
methamphetamines when she was sixteen.  Appellant admitted, however, that she
continued using marijuana.  Appellant testified that she stopped living with
J.K. when she was twenty-one because J.K. used drugs and physically abused
her.  Appellant testified that V.K.C.K. was six years old at the time and that
her decision to leave J.K. showed her ability to make sound decisions for her
children.

Appellant
subsequently met and married J.A.B., J.D.B.’s father, and Appellant and her
children lived with J.A.B. from at least January 2007 through September 2008. 
They lived in a Gainesville apartment until June 2007, in Mississippi with
J.A.B.’s family from June through September 2007, and in a Gainesville motel
from September 2007 through September 2008.  Appellant testified that in 2008,
J.A.B. passed out in the motel room—with the door locked and her children
outside—while she was at work.  Appellant also testified that J.A.B. smoked a
lot of marijuana and that she often smoked marijuana with him, but Appellant
said that she did not smoke marijuana when her children were present. 
Appellant also testified that her children witnessed J.A.B. smoking “ice” and
told her about it.  Appellant testified that she then had a “falling out” with
J.A.B. and that she and her children moved in with her mother from September
through December 2008.  Appellant testified that her leaving J.A.B. also
reflected her ability to make good decisions for her children. 

Appellant
first met Billy J. in September 2007, and Billy began living with Appellant and
her children at Appellant’s mother’s house in September 2008. Appellant
testified that she knew Billy had a felony conviction for injury to a child
after scalding the child with hot water, that he had served seven years of a
thirty-five year sentence, and that he was on parole.  However, Appellant said
that she had not seen anything that caused her concern when Billy was around
her children, that she lived with Billy because he supported and cared for her
and her children, and that there was a positive atmosphere with Billy around. 
The Department initially offered parenting services to Billy but subsequently
determined that he should not have any contact with the children and that
Appellant’s children could not live with her if she continued seeing Billy. 

In
December 2008, the Department advised Appellant that she would not be able to
keep her children if she continued living with Billy.  Thus, Appellant moved
out of her mother’s house, and Billy moved to a different place.  Appellant
testified that she subsequently lived with Billy from February through August
2009 but that she did not have possession of her children at the time. 
Appellant also testified that she had not had any contact with Billy since August
2009 because the Department said that she could never have her children back if
she was still with him.

Appellant
admitted to using marijuana from the age of twelve through February 2010 and
testified that she had not received treatment for her addiction.  In addition,
Appellant admitted that she tested positive for marijuana use at the time
J.D.B. was born in 2003; that she had two convictions for marijuana possession,
both occurring after J.D.B. was born;[2] and that she previously
smoked marijuana to calm her nerves and get by when she was without her bipolar
medication.  Moreover, Appellant admitted having four positive marijuana tests
during the pendency of this case.  However, Appellant denied ever smoking or
being under the influence of marijuana around or while supervising her
children, and Appellant testified that she had not used marijuana since
February 2010.  She said that she had been attending Narcotics Anonymous
meetings since March 2010, but she also said that she did not have a Narcotics
Anonymous sponsor or sign-in sheets to confirm her attendance.

Appellant
last had a job in August 2009 and was evicted from her apartment in December
2009.  Appellant testified that she had been homeless since December 2009 and
that she had slept on a park bench the night before trial.  Appellant agreed
that she was unable at the time of trial to provide a safe and healthy home for
her children and that she did not have relatives available to help, but she
asked the trial court for additional time to establish stability and prove her
ability to stay drug-free.

Finally,
Appellant testified that V.K.C.K. was sexually abused by a cousin in December
2004 and that Appellant immediately reported the incident to authorities. 
Appellant also testified that V.K.C.K. is bipolor and has been diagnosed with
ADHD.

Department
caseworker Cecilia Powers testified that Appellant signed her service plan in
July 2009 but did not complete it.  Specifically, Appellant was unsuccessfully
discharged from individual counseling and did not maintain stable housing or
employment.  Powers testified that Appellant’s homelessness caused concern for
the children’s safety and stability and that she was additionally concerned
that Appellant continued to associate with drug users, even though Appellant
claimed to have personally stopped using drugs.

Powers
testified that V.K.C.K. and J.D.B. had been in a foster home since June 2009,
that they were doing well, that they attend weekly therapy sessions, and that
they were performing better in school with the passage of time.  Powers said
that the Department would like to have the children adopted, and she testified
that she believed termination of Appellant’s parental rights was in the
children’s best interest.

III. 
Applicable Law

A. 
Termination of Parental Rights

          A
parent’s rights to “the companionship, care, custody, and management” of his or
her children are constitutional interests “far more precious than any property
right.”  Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397
(1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  “While parental
rights are of constitutional magnitude, they are not absolute.  Just as it is
imperative for courts to recognize the constitutional underpinnings of the
parent-child relationship, it is also essential that emotional and physical
interests of the child not be sacrificed merely to preserve that right.”  In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State
seeks not just to limit parental rights but to erase them permanently—to divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child’s right to inherit.  Tex.
Fam. Code Ann. § 161.206(b) (Vernon 2008); Holick v. Smith, 685
S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and
strictly construe involuntary termination statutes in favor of the parent.  Holick,
685 S.W.2d at 20–21; In re R.R., 294 S.W.3d 213, 233 (Tex. App.—Fort
Worth 2009, no pet.).

          In
proceedings to terminate the parent-child relationship brought under section
161.001 of the family code, the petitioner must establish one ground listed
under subsection (1) of the statute and must also prove that termination is in
the best interest of the child.  Tex. Fam. Code Ann. § 161.001 (Vernon
Supp. 2010); In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements
must be established; termination may not be based solely on the best interest
of the child as determined by the trier of fact.  Tex. Dep’t of Human Servs.
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

          Termination
decisions must be supported by clear and convincing evidence.  Tex. Fam. Code
Ann. §§ 161.001, .206(a).  Evidence is clear and convincing if it “will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.”  Id. § 101.007
(Vernon 2008).  Due process demands this heightened standard because
termination results in permanent, irrevocable changes for the parent and child. 
In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see In re J.A.J.,
243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and
modification).

B. 
Legal Sufficiency Standard of Review

In
evaluating the evidence for legal sufficiency in parental termination cases, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005).  We review all the evidence in
the light most favorable to the finding and judgment.  Id.  We resolve
any disputed facts in favor of the finding if a reasonable factfinder could
have done so.  Id.  We disregard all evidence that a reasonable
factfinder could have disbelieved.  Id.  We consider undisputed evidence
even if it is contrary to the finding.  Id.  That is, we consider
evidence favorable to termination if a reasonable factfinder could, and we
disregard contrary evidence unless a reasonable factfinder could not.  Id.

          We
cannot weigh witness credibility issues that depend on the appearance and
demeanor of the witnesses, for that is the factfinder’s province.  Id. at
573, 574.  And even when credibility issues appear in the appellate record, we
defer to the factfinder’s determinations as long as they are not
unreasonable.  Id. at 573.

C. 
Factual Sufficiency Standard of Review

          In
reviewing the evidence for factual sufficiency, we give due deference to the
factfinder’s findings and do not supplant the judgment with our own.  In
re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006).  We determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that the parent violated the relevant provision of section 161.001(1) and that
the termination of the parent-child relationship would be in the best interest
of the child.  Tex. Fam. Code Ann. § 161.001; In re C.H., 89 S.W.3d
at 28.  If, in light of the entire record, the disputed evidence that a
reasonable factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction
in the truth of its finding, then the evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.

IV. 
Endangerment Findings

          Appellant
argues in her second issue that the evidence is legally and factually
insufficient to support the trial court’s finding that she engaged in conduct
or knowingly placed her children with persons who engaged in conduct which
endangered their physical or emotional well-being.  See Tex. Fam. Code Ann. § 161.001(1)(E).

A. 
Applicable Law

Under
section 161.001(E), the relevant inquiry is whether evidence exists that the
endangerment of the children’s physical well-being was the direct result of Appellant’s
conduct, including acts, omissions, or failures to act.  See J.T.G., 121
S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); see also Tex. Fam.
Code Ann. § 161.001(1)(E).  Additionally, termination under (E) must be based
on more than a single act or omission; the statute requires a voluntary,
deliberate, and conscious course of conduct by the parent.  J.T.G., 121
S.W.3d at 125; see Tex. Fam. Code Ann. § 161.001(1)(E).  It is not
necessary, however, that the parent’s conduct be directed at the child or that
the child actually suffer injury.  Boyd, 727 S.W.2d at 533; J.T.G.,
121 S.W.3d at 125.  The specific danger to the children’s well-being may be
inferred from parental misconduct standing alone.  Boyd, 727 S.W.2d at
533; In re R.W., 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet.
denied).  A parent’s mental state may be considered in determining whether the
children are endangered if that mental state allows the parent to engage in
conduct that jeopardizes the physical or emotional well-being of the children.  In
re J.I.T.P., 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no
pet.).

B. 
Discussion

          The
evidence is legally and factually sufficient to support the trial court’s
section 161.001(1)(E) finding.  The evidence reflects that although Appellant
testified that she stopped using marijuana in February 2010, she had never
received treatment for her addiction and had used marijuana since the age of
twelve.  In addition, Appellant had two marijuana possession convictions after
J.D.B., her youngest child, was born, and she tested positive for marijuana on
four separate occasions during the pendency of this case.  Moreover, although
Appellant testified that she had been attending Narcotics Anonymous since March
2010, she did not have sign-in sheets or a sponsor to confirm her attendance,
and she continued to associate with marijuana users even after she personally
stopped smoking marijuana.  Further, although Appellant denied ever using drugs
in her children’s presence, Powers testified that Appellant’s continued
association with drug users jeopardizes her children’s safety.

          Also,
Appellant lived for several years with J.A.B., who regularly abused drugs and
passed out in a motel room with V.K.C.K. and J.D.B. locked outside unattended. 
In addition, Appellant knew about Billy’s felony conviction for injury to a
child before living with him but nevertheless allowed him to live with her and
her children.  And she continued living with Billy even after learning that she
could not have custody of her children if she lived with him.  Although
Appellant testified that her decisions to leave J.K. and J.A.B. were best for
her children, Appellant had full knowledge of Billy’s felony conviction before
allowing him to move in with her and her children.

          Finally,
Appellant was homeless during most of the seven months before trial and had not
had a job in almost a year.  Although some of Appellant’s difficulties relate
to her impoverishment, Appellant’s conduct both before and after her children’s
removal indicates an unwillingness to refuse to associate with those who may be
a danger to herself and her children.  See generally In re T.T.F.,
331 S.W.3d 461, 483–84 (Tex. App.—Fort Worth 2010, no pet.); In re S.G.S.,
130 S.W.3d 223, 238 (Tex. App.—Beaumont 2004, no pet.).

          Viewing
all the evidence in the light most favorable to the termination judgment, and
disregarding all contrary evidence that a reasonable factfinder could
disregard, we hold that the evidence is legally sufficient to support a
factfinder’s firm conviction or belief that Appellant engaged in conduct that
endangered V.K.C.K. and J.D.B.’s physical or emotional well-being.  See
Tex. Fam. Code Ann. § 161.001(1)(E); J.P.B., 180 S.W.3d at 573; S.G.S.,
130 S.W.3d at 238.  Likewise, giving due deference to the trial court as
factfinder, we hold that the evidence is also factually sufficient to support the
trial court’s finding that Appellant engaged in conduct that endangered
V.K.C.K. and J.D.B.’s physical or emotional well-being.  See Jones v. Tex.
Dep’t of Family & Protective Servs., No. 03-07-00727-CV, 2009 WL
1563544, at *8 (Tex. App.—Austin June 4, 2009, no pet.) (holding evidence
legally and factually sufficient to support section 161.001(E) finding because,
although the appellant had made recent significant progress after years of drug
abuse, children had witnessed domestic abuse and had been subjected to a
chaotic and violent environment).  We therefore overrule Appellant’s second
issue.[3]

V. 
Best Interest Finding

          Appellant
argues in her fifth issue that the evidence is legally and factually
insufficient to support the trial court’s finding that termination of her
parental rights is in the children’s best interest.

A. 
Applicable Law

          There
is a strong presumption that keeping a child with a parent is in the child’s
best interest.  In re R.R., 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and
permanent placement of the child in a safe environment is also presumed to be
in the child’s best interest.  Tex. Fam. Code Ann. § 263.307(a) (Vernon
2008).  The following factors should be considered in evaluating the parent’s
willingness and ability to provide the child with a safe environment:

(1) the child’s age and physical and mental
vulnerabilities;

 

(2) the frequency and nature of out-of-home placements;

 

(3) the magnitude, frequency, and circumstances of the
harm to the child;

 

(4) whether the child has been the victim of repeated
harm after the initial report and intervention by the department or other
agency;

 

(5) whether the child is fearful of living in or
returning to the child’s home;

 

(6) the results of psychiatric, psychological, or
developmental evaluations of the child, the child’s parents, other family
members, or others who have access to the child’s home;

 

(7) whether there is a history of abusive or assaultive
conduct by the child’s family or others who have access to the child’s home;

 

(8) whether there is a history of substance abuse by the
child’s family or others who have access to the child’s home;

 

(9) whether the perpetrator of the harm to the child is
identified;

 

(10) the willingness and ability of the child’s family
to seek out, accept, and complete counseling services and to cooperate with and
facilitate an appropriate agency’s close supervision;

 

(11) the willingness and ability of the child’s family
to effect positive environmental and personal changes within a reasonable
period of time;

 

(12) whether the child’s family demonstrates adequate
parenting skills, including providing the child and other children under the
family’s care with:

 

(A) minimally adequate health
and nutritional care;

 

(B) care, nurturance, and
appropriate discipline consistent with the child’s physical and psychological
development;

 

(C) guidance and supervision
consistent with the child’s safety;

 

(D) a safe physical home
environment;

 

(E) protection from repeated
exposure to violence even though the violence may not be directed at the
child;  and

 

(F) an understanding of the
child’s needs and capabilities;  and

 

(13) whether an adequate social support system
consisting of an extended family and friends is available to the child.

 

Id. § 263.307(b);
R.R., 209 S.W.3d at 116.

Other,
nonexclusive factors that the trier of fact in a termination case may use in
determining the best interest of the child include:

(A)     the
desires of the child;

 

(B)     the emotional
and physical needs of the child now and in the future;

 

(C)     the
emotional and physical danger to the child now and in the future;

 

(D)     the
parental abilities of the individuals seeking custody;

 

(E)     the
programs available to assist these individuals to promote the best interest of
the child;

 

(F)     the
plans for the child by these individuals or by the agency seeking custody;

 

(G)     the
stability of the home or proposed placement;

 

(H)     the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and

 

(I)      any
excuse for the acts or omissions of the parent.

 

Holley
v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are
not exhaustive; some listed factors may be inapplicable to some cases; other
factors not on the list may also be considered when appropriate.  C.H.,
89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be
sufficient in a particular case to support a finding that termination is in the
best interest of the child.  Id.  On the other hand, the presence of
scant evidence relevant to each factor will not support such a finding.  Id.

B. 
Discussion

          The
evidence is legally and factually sufficient to support the trial court’s
finding that termination of Appellant’s parental rights is in the children’s
best interest.  The trial court heard evidence that V.K.C.K. and J.D.B. had
been exposed to Appellant’s physically abusive relationships and had lived with
known drug users for most of their lives; that Appellant tested positive for
marijuana when J.D.B. was born, continued using marijuana after J.D.B.’s birth,
was twice convicted of marijuana possession, and had four positive drug tests
during the pendency of the case; that Appellant’s family is not available or capable
of offering assistance to Appellant in raising her children; that V.K.C.K. was
sexually assaulted by a cousin at Appellant’s mother’s house; that Appellant
has a bipolar disorder and often runs out of medication; that Appellant
continued to associate with drug users even after she personally stopped
abusing drugs; and that Appellant did not complete her Department service plan
and was unsuccessfully discharged from psychological counseling.  See
Tex. Fam. Code Ann. § 263.307(b)(3), (6)–(11), (13).  And although there
is evidence that Appellant closely checked her children’s physical well-being
at visitations, the trial court also heard evidence that Appellant was homeless
and unable to provide her children with basic necessities or a safe home, that Appellant
and her children continually moved from place to place, that Appellant allowed
her children to live with Billy with full knowledge of Billy’s felony
injury-to-a-child conviction, and that V.K.C.K. has ADHD and bipolar
diagnoses.  See id. § 263.307(b)(12); Holley, 544 S.W.2d at
371–72.  Moreover, the trial court heard evidence that the Department would
like to have V.K.C.K. and J.D.B. adopted, that V.K.C.K. and J.D.B. attend
weekly therapy sessions and are performing better in school, and that Appellant
acknowledged her inability to provide for her children but wanted more time to
prove her ability to stay drug free and provide stability for her children.  See
Holley, 544 S.W.2d at 371–72.

          Viewing
the evidence in the light most favorable to the finding and judgment, we
conclude that the evidence is such that the trial court could reasonably form a
firm belief or conviction that termination of Appellant’s parental rights is in
her children’s best interest.  See J.P.B., 180 S.W.3d at 573.  We also conclude,
viewing all the evidence in a neutral light, that the trial court could
reasonably form a firm conviction or belief that termination is in V.K.C.K. and
J.D.B.’s best interest.  See H.R.M., 209 S.W.3d at 108.  We therefore
hold that the evidence is legally and factually sufficient to support the trial
court’s best interest finding.  See Jones, 2009 WL 1563544, at *8
(holding evidence legally and factually sufficient to support best interest
finding because the appellant’s recent progress toward stability was unproven,
her prognosis was “guarded,” and her children had improved significantly while
living in foster care).  We overrule Appellant’s fifth issue.

VI. 
Conclusion

          Having
overruled Appellant’s second and fifth issues, and having not reached her first,
third, and fourth issues, we affirm the trial court’s order terminating
Appellant’s parental rights to V.K.C.K. and J.D.B.

 

 

ANNE GARDNER
JUSTICE



PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GARDNER, JJ.

 

DELIVERED:  May 12, 2011









[1]See Tex. R. App. P. 47.4.





[2]Appellant claimed that the
marijuana involved in each conviction belonged to her husband.





[3]In light of our
disposition of Appellant’s second issue, we need not address her first, third,
and fourth issues.  See Tex. R. App. P. 47.1; see also In re E.M.N.,
221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.) (stating that a
finding of only one ground alleged under section 161.001(1) is sufficient to
support a judgment of termination).